UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAUL MARCZYK               :
                                  :
         v.              :     C.A. No. 08-330A
                                    :
MICHAEL J. ASTRUE,       :
Commissioner of the Social Security   :
Administration              :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on September 2, 2008 seeking to reverse the decision of the Commissioner.  On April 30, 2009, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 8).  On May 29, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 4, 2005 (Tr. 54-56) and an application for SSI on July 8, 2005 (Tr. 312-317) alleging disability as of June 11, 2003.  Plaintiff's disability insured status expired on July 1, 2005.  (Tr. 23).  The applications were denied initially (Tr. 40-43) and on reconsideration.  (Tr. 47-49).  Plaintiff filed a request for an administrative hearing.  (Tr. 50-52).  On July 5, 2007, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 338-384).

On August 31, 2007, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 18-32).  The Appeals Council denied Plaintiff's request for review on June 27, 2008.  (Tr. 13-15).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in evaluating the medical evidence and that his RFC assessment is not supported by substantial evidence.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ committed no error, and that his RFC assessment and Step 5 finding of no disability are supported by substantial evidence.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

-4-

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human

Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them

such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.   20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

-10-

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d

24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352

(11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination

is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d

1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was fifty-two years old at the time of the ALJ hearing.  (Tr. 54).  Plaintiff is a high

school graduate (Tr. 65, 346) and attended community college for about one year.  (Tr. 104).

Plaintiff has past relevant work as a construction laborer, carpenter and commercial fisherman.  (Tr.

62, 94).  Plaintiff alleged disability due to hip surgery and anxiety.  (Tr. 61).

As the result of an automobile accident at age 19, Plaintiff broke vertebrae in his back.  (Tr.

221). Despite that injury, Plaintiff was subsequently able to perform heavy work for many years.

Id. Plaintiff suffered a fractured left hip and pelvis in June 2003 when he fell off of a roof while

stripping shingles.  (Tr. 220).  He underwent hip surgery consisting of open reduction internal

fixation ("ORIF").  (Tr. 138).

Plaintiff went to Memorial Hospital of Rhode Island ("MHRI") on February 6, 2005, with

complaints of left hip pain.  (Tr. 126).  The pain was rated at a "5" level on the ten-point pain scale.

(Tr. 129).  Plaintiff also complained that the pain, and being unemployed, "stresses him out

emotionally and financially," and he sought medication for "very bad anxiety."  (Tr. 128).  Plaintiff

had left hip tenderness, but his station and gait were normal.  (Tr. 130).  He had full and unrestricted range of motion in all joints.  Id.  Plaintiff had minimal moderate distress, and his affect was angry, depressed and resentful.  Id.  He was alert and cooperative, his cognition and insight were normal, and his judgment was intact.  Id.  Low back pain and anxiety with depression were diagnosed, and Plaintiff was prescribed benzodiazepines and Ultram.  (Tr. 131).

On February 22, 2005, Dr. Hookway of Blackstone Valley Community Health Care saw Plaintiff, who was using ibuprofen and methadone, swimming and going to a pain clinic for his hip and back pain.  (Tr. 138).  Dr. Hookway indicated that, with respect to functional disability, Plaintiff would need some retraining.  Id.  In March 2005, Dr. Hookway reported that Plaintiff wanted to get general public assistance ("GPA") but also was employed "under the table."  (Tr. 139).  On examination, Dr. Hookway noted that Plaintiff's spine was non-tender and that he had near full range of motion in his left hip with discomfort on abduction and adduction.  Id.

In April 2005, Plaintiff continued to complain to Dr. Hookway of hip pain.  (Tr. 236).  Dr. Hookway's examination results were unchanged from the prior month.  Id.  Plaintiff wanted to be switched from oxycontin to methadone, but Dr. Hookway refused and instead gave him a prescription for sixty oxycontin with no refills.  (Tr. 237).  Plaintiff later indicated that he had "lost" his pills, and Dr. Hookway indicated that he would not give Plaintiff another renewal in the future if he "lost" pills again.  Id.

In April 2005, Dr. Jones, a Consulting Physician, reviewed Plaintiff's medical records and prepared an assessment of his physical RFC.  (Tr. 143-150).  Dr. Jones opined that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, could sit for about six hours in an eight-hour workday, and could stand/walk for no more than four hours in an eight-hour

workday.  (Tr. 144).  She also opined that Plaintiff did not have any postural, manipulative, visual, communicative or environmental limitations.  (Tr. 145-147).

In April 2005, Dr. Eileen Lynch, a Consulting Psychologist, indicated that there was insufficient evidence to show that Plaintiff had a severe mental impairment.  (Tr. 151-164).

In an April 22, 2005 psychosocial assessment, Plaintiff was noted as being anxious.  (Tr. 238).  He was seeking assistance in obtaining employment and GPA and also noted that his doctor was not willing to prescribe the medication he had requested.  Id.  Between that time and March 2007, Plaintiff was seen numerous times by a social worker, Tirza Goncalves, and on occasion by Joyce Masse, a licensed clinical social worker.  (Tr. 241, 244-245, 251, 255, 258, 261-262, 284-306).  On May 11, 2005, Plaintiff told Ms. Goncalves that his doctor had given him the medications he requested and that he was feeling "much better" and able to swim and cut grass.  (Tr. 241).  Plaintiff indicated that he was seeking employment as a school bus driver and needed his medications changed for that job.  Id.

On May 16, 2005, Dr. Terek of the Rhode Island Hospital Orthopedic Clinic examined Plaintiff and obtained x-rays of his hips and pelvis.  (Tr. 166-168).  Plaintiff had positive straight leg raising and an antalgic gait.  (Tr. 166).  The pelvic x-rays showed iliac wing and anterior column fracture that was transfixed with standard alignment and no visible fracture lucency.  (Tr. 167-168).  The right hip x-rays showed only a minimal degenerative change and narrowing of the superior joint space.  Id.  The x-rays of Plaintiff's left hip showed an anterior column fracture that was transfixed and osteoarthritic changes with mild deformity of the superior portion of the femoral head.  Id.  Dr. Terek noted that the x-rays showed that the hardware was in good position with some mild joint space narrowing.  (Tr. 166).

-13-

On May 20, 2005, Plaintiff complained to Dr. Hookway that he had groin pain and right leg pain after doing work lifting and carrying fifteen- to twenty-pound boxes. (Tr. 242). Dr. Hookway diagnosed a right groin pull and referred Plaintiff to physical therapy. (Tr. 243). Four days later, even before starting physical therapy, Plaintiff reported that his groin was feeling "a bit better." Id.

It was noted in Plaintiff's counseling session on June 16, 2005, that his affect was bright and that he was able to stay focused throughout the session. (Tr. 245). His main concern was finding a stable job. Id. On June 24, 2005, Plaintiff told Dr. Hookway that his groin pain had decreased significantly. (Tr. 246). A few days later, Plaintiff complained of worsening back pain after he tried riding a bicycle and raking leaves. (Tr. 247). Dr. Hookway noted that there were no muscle spasms and that Plaintiff's back was nontender. Id.

In his counseling session on July 13, 2005, Plaintiff was anxious. (Tr. 251). He was undecided whether to try to obtain employment as a school bus driver, seek training through Goodwill, or pursue a Social Security disability claim. Id. He reported that he would have to discontinue methadone to work as a bus driver but could not afford the necessary treatment to do so. Id.

On August 5, 2005, Plaintiff reported that he was swimming for twenty minutes per day, five days a week. (Tr. 253). He also indicated that he was eligible for job retraining and his mood was described as "greatly improved." Id. Dr. Hookway completed a form indicating his opinion of Plaintiff's work restrictions. (Tr. 307). Dr. Hookway reported that Plaintiff could sit for eight hours a day; stand for eight hours a day; walk for four hours a day; bend for four hours a day; kneel for two hours a day; and lift, climb, squat or twist for an hour a day. Id. He opined that Plaintiff could

lift ten to twenty pounds; that he did not have any hand restrictions; and that he could work eight hours a day, provided there were breaks.  Id.

In August 2005, Dr. Sandell, a Medical Consultant, reviewed Plaintiff's updated medical records and prepared an assessment of his physical RFC.  (Tr. 171-178).  Dr. Sandell opined that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, could sit for about six hours in an eight-hour workday, and could stand/walk for two to four hours in an eight-hour workday.  (Tr. 172).  The standing/walking limitation was subsequently changed on January 13, 2006 to an ability to stand/walk for about six hours in an eight-hour workday.  Id.  Dr. Sandell opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl (Tr. 173) but had no manipulative or environmental limitations.  (Tr. 174, 175).

In September 2005, Dr. Shah reviewed Dr. Sandell's physical RFC assessment and noted that the record, in particular, Plaintiff's activities, did not support a two- to four-hour limitation in standing/walking.  (Tr. 194-195).  In December 2005, Dr. Turner affirmed Dr. Shah's conclusion.  (Tr. 214).  Dr. Turner prepared an RFC assessment in which she indicated an ability to perform the full range of light work.  (Tr. 206-213).

In early September 2005, Plaintiff's affect was bright, and he was looking forward to a three-week training program with Goodwill.  (Tr. 255).  At the end of September, Plaintiff was working out (riding a bike, using a rowing machine, swimming and using weights) on a daily basis and was doing job training at Goodwill.  (Tr. 256).  In October 2005, Plaintiff's pain was reportedly unchanged.  (Tr. 257).  In late November 2005, Dr. Hookway reported that Plaintiff "has done fairly well."  Id.  He noted that Plaintiff had some back pain after raking leaves for a few hours but that he got over it fairly quickly.  Id.

In early December 2005, Plaintiff was anxious and "shaky" because he could not get his Ativan prescription refilled. (Tr. 258-259). By December 22, 2005, however, his affect was bright, and he told the social worker that he had been able to get the prescription refilled and was doing well. (Tr. 261). Plaintiff discussed his plans to start attending New England Tech ("NET"). Id. His affect remained bright in January 2006, and Plaintiff reported that he would be beginning classes at NET in March. (Tr. 262).

In January 2006, Plaintiff's pain was reported as persisting at a "4" level on the ten-point pain scale. (Tr. 260). On February 1, 2006, Plaintiff complained of back pain after having slept in an easy chair two weeks earlier. (Tr. 263). He reported the severity of the pain at the "4" to "6" level on the ten-point pain scale. Id.

On February 8, 2006, Plaintiff's affect was bright, and he was focusing on starting school at NET. (Tr. 284). Plaintiff reported that he continues to swim at the YMCA, and he had "no worries" because all of his school bills were paid. (Tr. 284). At the end of the month, Plaintiff reported some frustration because his Social Security claim had been denied; but, he had an appointment with an attorney, and he was going to appeal the denial. (Tr. 285). Plaintiff's affect was noted as being bright. (Tr. 285). His affect remained bright in March 2006. (Tr. 286).

Plaintiff's attorneys referred him to a Psychiatrist, Dr. James Sullivan, for a psychiatric evaluation. Dr. Sullivan examined Plaintiff on April 15, 2006. (Tr. 219-226). Plaintiff indicated that he felt depressed, anxious and worried because he was unable to contribute financially to the household. (Tr. 223). Dr. Sullivan described Plaintiff as restless and anxious, that he described having low self-esteem, and that he was ruminative and easily distracted due to financial concerns. Id. There was no evidence of psychosis, and Dr. Sullivan indicated that Plaintiff's insight and

judgment were good.  Id.  Dr. Sullivan diagnosed a major depressive disorder and a generalized

anxiety disorder and rated Plaintiff's global assessment of functioning ("GAF") at 48 (i.e., serious

symptoms).  (Tr. 223-224).

Dr. Sullivan completed an RFC questionnaire regarding Plaintiffs mental abilities based upon

his examination.  (Tr. 225-226).  He opined that there was mild deterioration in Plaintiff's personal

habits and in his ability to perform simple tasks.  Id.  Dr. Sullivan also noted that Plaintiff's ability

to relate to other people and to respond appropriately to co-workers and supervisors was moderately

impaired.  Id.  Dr. Sullivan opined that Plaintiff's ability to respond to customary work pressure and

to perform complex, repetitive or varied tasks was moderately severely impaired.  (Tr. 226).  Finally,

according to Dr. Sullivan, Plaintiff's daily activities were moderately severely restricted, his

interests were moderately severely constricted, and his ability to understand, remember and carry

out instructions was moderately severely impaired.  (Tr. 225).  Based on this examination of

Plaintiff, Dr. Sullivan was able to opine that this degree of severity in impairment of his abilities had

existed since June 2003.  (Tr. 226).

On April 17, 2006, Ms. Masse, a licensed clinical social worker, conducted a psychosocial

assessment of Plaintiff.  (Tr. 287-290).  Plaintiff was mildly anxious but easily engaged in the

assessment process.  (Tr. 287). He exhibited mild difficulty with concentration but responded well

to the assessment process.  Id.  Plaintiff was becoming increasingly anxious due to his financial

situation and mildly frustrated due to his medical condition.  (Tr. 288).  He was experiencing chest

tightness but no panic attacks.  Id.  Plaintiff reported that he enjoyed going to the library, reading,

and gardening and indicated that he occasionally went to "Day Labor" to earn money by doing

physical jobs.  Id.  Plaintiff was in a training program for cabinetry.  (Tr. 287).  Ms. Masse

diagnosed Plaintiff with opiate dependence and a depressive disorder and rated his GAF at 5l (i.e., moderate symptoms).  (Tr. 289).

During his May 2006 meeting with Ms. Masse, Plaintiff exhibited a moderate energy level, and he smiled several times during the session.  (Tr. 291).  He reported that he sometimes exercised for too long resulting in an increase in his pain.  Id.  In June 2006, Plaintiff was easily engaged during his session.  (Tr. 292).  He had made the Dean's List at school.  Id.  Plaintiff was ambivalent about attending a follow-up appointment in July and did not attend.  (Tr. 292-293).

In June 2006, Dr. Hookway wrote to the State Office of Rehabilitation Services and asked if they could assist Plaintiff with payment of YMCA membership fees.  (Tr. 308).  Dr. Hookway noted that Plaintiff was involved in their job retraining program and that "physical exercise is one of the mainstays in his pain control regimen."  Id.

In August 2006, Plaintiff's affect was bright.  (Tr. 294).  Plaintiff reported that things were going "very well" at school, and he was looking forward to the next semester.  Id.  In September 2006, his affect continued to be bright, and he again indicated that the new school year was going well.  (Tr. 295).

In October 2006, Plaintiff's affect remained bright, but he was concerned that the results of a toxicology screening that had been performed by his doctor "will not be a good one."  (Tr. 296). Later that month, Plaintiff said that his classes were going well and that was enjoying class very much.  (Tr. 297).  Subsequent visits to Ms. Goncalves did not indicate significant changes except that he was anxious about having to reschedule a doctor's appointment that had been scheduled in November.  (Tr. 298-306).

In December 2006, an x-ray of Plaintiff's left hip reflected status post internal fixation and showed severe osteoarthritis of the left hip with mild femoral head deformity and sclerosis and cyst formation.  (Tr. 279).

In April 2007, Dr. Hookway completed a physical capacity evaluation (Tr. 228) of Plaintiff and a supplemental questionnaire regarding his psychiatric impairment.  (Tr. 234-235).  Dr. Hookway opined that Plaintiff could only stand or walk for one hour in an eight-hour workday, could only sit for two hours in such an eight-hour workday, and could alternate sitting and standing for only four hours in an eight-hour workday.  (Tr. 228).  He also opined that Plaintiff could lift and carry up to five pounds frequently and up to ten pounds occasionally but could never lift or carry any greater weight.  Id.  Dr. Hookway opined that Plaintiff could never crawl, kneel or squat and could only bend occasionally.  Id.  In addition, Dr. Hookway indicated that Plaintiff could constantly be exposed to noise, vibration and moving machinery; frequently be exposed extreme temperatures or dust, fumes and gases; and occasionally be exposed to unprotected heights.  (Tr. 28).

As to his mental limitations, Dr. Hookway opined that there was mild deterioration in Plaintiff's personal habits and that his ability to respond to supervision or to perform repetitive tasks was mildly impaired.  (Tr. 234-235).  He further opined that Plaintiff's interests were moderately constricted and that his ability to respond appropriately to co-workers and to understand, remember and carry out instructions was moderately impaired.  (Tr. 234).  Dr. Hookway opined that Plaintiff's daily activities were moderately severely restricted and that his ability to perform simple, complex or varied tasks, to relate to other people, and to respond to customary work pressure was moderately severely impaired.  (Tr. 234-235).

Plaintiff's attorneys referred him to Dr. Sullivan for a second psychiatric evaluation a few weeks before his ALJ hearing. (Tr. 268-272). Dr. Sullivan again diagnosed a major depressive disorder and a generalized anxiety disorder, which he now rated as moderate to severe. (Tr. 271). Dr. Sullivan rated Plaintiff's GAF at 47. Id.

On July 5, 2007, the day of Plaintiff's ALJ hearing, Dr. Hookway completed a pain questionnaire and a medical questionnaire in which he indicated that Plaintiff suffered from "severe" pain as a result of his fracture of the left pelvis and severe osteoarthritis of his left hip. (Tr. 276-278). Dr. Hookway opined that Plaintiff could not sustain competitive employment on a full-time, ongoing basis. (Tr. 278). At that time, he completed another evaluation of Plaintiff's physical capability. (Tr. 275). Dr. Hookway opined that Plaintiff could not stand or walk for even an hour in an eight-hour workday, could only sit for one hour in such an eight-hour workday, and, even alternating sitting and standing, could sit for only one hour in an eight-hour workday. Id. He also opined that Plaintiff could lift and carry up to ten pounds occasionally but could never lift or carry any greater weight and could never crawl, kneel, or squat and could only bend occasionally. Id. He also indicated that Plaintiff could not use either leg to operate controls and could never be exposed to extreme temperatures or dust, fumes and gases and could only occasionally be exposed to moving machinery or unprotected heights. Id.

### A.      The ALJ's RFC Assessment is Supported by Substantial Evidence

The ALJ decided this case adverse to Plaintiff at Step 5. He found that Plaintiff's hip impairment, depression and anxiety were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 23). However, he did not find such impairments to meet a Listing. Id. As to RFC, the ALJ determined that Plaintiff was capable of performing a "wide range of light

work...with a moderate impairment in maintaining attention and concentration." (Tr. 24). Based on this RFC and testimony from the VE, the ALJ found that Plaintiff was not disabled because his RFC did not preclude him from making a successful adjustment to other unskilled, light positions existing in significant numbers in the economy. (Tr. 31). Finally, the ALJ noted that Plaintiff's history of opiate dependence was not a contributing factor material to his no-disability finding. Id.

Plaintiff argues that the ALJ's evaluation of the medical evidence was flawed and that he erred by failing to give greater, if not controlling, weight to treating source opinions. (Document No. 8 at pp. 10-12). Basically, the ALJ favored the consulting opinions of Dr. Jones (Ex. 4F), Dr. Sandell (Ex. 8F) and Dr. Turner (Ex. 14F), over the treating source opinion of Dr. Hookway (Ex. 22F). (Tr. 29). In particular, the ALJ concluded that Dr. Turner's opinion that Plaintiff could perform light work was largely supported by and consistent with the medical evidence as a whole but that Dr. Hookway's much more restrictive opinion was not supported by, and was inconsistent with, the evidence as a whole. Id.

The ALJ also accurately noted (Tr. 29) that Dr. Hookway's opinion that Plaintiff was not capable of sustaining any competitive work on a full-time basis (Tr. 278) is an opinion on the "ultimate question" of disability which is reserved to the Commissioner or his delegees. See 20 C.F.R. §§ 404.1527(e) and 416.927(e). Since these are not considered medical opinions, no special significance is given to the source of such an opinion. Id.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient' impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of

record, 20 C.F.R. §  404.1527(d); see also <u>Castro v. Barnhart</u>, 198 F. Supp. 2d 47, 54 (D. Mass

2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with

other substantial evidence in the record, even if that evidence consists of reports from non-treating

doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on

the length of the treating relationship and the frequency of the examinations. 20 C.F.R. §

404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be

evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of

weight given.  20 C.F.R. §  404.l527(d)(2).

The ALJ thoroughly evaluated and discussed the medical evidence.  (Tr. 25-29).  In April

2007, Dr. Hookway opined that Plaintiff was limited to one hour per workday of standing or

walking, two hours of sitting and four hours of alternating between sit/stand until he needed to lie

down.  (Tr. 228).  However, in July 2007 (on the day of the ALJ hearing), Dr. Hookway's physical

capacity opinion shifted, and he opined that Plaintiff was much more limited.  (Tr. 275).  In

particular, Plaintiff was now unable to stand or walk for even one hour per workday and was limited

to a maximum one hour of sitting or sit/stand option in a workday.  <u>Id.</u>

The ALJ accurately identified a discrepancy between Dr. Hookway's July 2007 opinion and

his contemporaneous reports in the treatment records of moderate pain.  For example, Dr. Hookway

generally documented pain reports in the range of four to six on a ten-point pain scale.  <u>See</u>, <u>e.g.</u>, Tr.

129, 260, 263.  Dr. Hookway's treatment records also report a level of activity by Plaintiff exceeding

the limitations set forth in his July 2007 opinion.  <u>See</u>, <u>e.g.</u>, Tr. 253, 256, 257.

Moreover, Plaintiff's activities from March 2006 through the date of the ALJ hearing

undermine the reliability of Dr. Hookway's July 2007 opinions.  In particular, Plaintiff testified that

-22-

he was attending twenty hours of classes per week for cabinet making that included both class time and "hands-on" work.  (Tr. 357-358).  He indicated that the hands-on work included use of power woodworking tools and lifting well beyond the limitations which Dr. Hookway assessed.  (Tr. 359). He swam regularly, took walks, went to the library, did his own laundry, cleaned dishes and was able to do a "little bit" of yard work.  (Tr. 360).  The record also indicates that, after both the disability onset date and date last insured for DIB, Plaintiff had worked "under the table" in 2005 (Tr. 139) and as a day laborer in 2006.  (Tr. 288).  This level of activity is simply not consistent with Dr. Hookway's July 2007 opinion, and Plaintiff has shown no error in the ALJ's evaluation of such opinions.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also.  "Benetti v. Barnhart, No. 05-2890, 2006 WL 2555972 (1st Cir. Sept. 9, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1 (1st Cir. 1987)).  In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability findings.

Relying upon Alcantara v. Astrue, 2007 WL 4328148 (1st Cir. Dec. 12, 2007) (per curiam), Plaintiff contends that because the state agency physician's assessments were based on an incomplete record, they should not be considered "substantial evidence" to support the ALJ's RFC findings.  This case is distinguishable from Alcantara.  In Alcantara, the administrative record indicated that the claimant's condition deteriorated after the death of her parents in a fairly short time span.  The First Circuit faulted the ALJ for relying on a consulting opinion which was completed before the death of the claimant's father and showed no awareness of the earlier death of the claimant's mother.  Further, it concluded that the ALJ did not adequately explain the basis for

his conclusion that the record underwent "no material change" after the date of the consultant's report relied upon.

Here, Plaintiff faults the ALJ for crediting the assessment of Dr. Turner (Ex. 14F) because her assessment was provided in December 2005 – twenty months prior to the ALJ hearing.  First, this argument has no merit regarding Plaintiff's claim for DIB.  It is undisputed that Plaintiff's insured status for DIB expired on June 30, 2005.  (Tr. 23).  Thus, the issue as to DIB was Plaintiff's capabilities on or prior to June 30, 2005.  Since the consulting opinions in question (Exs. 4F, 8F and 14F) were all rendered in 2005, there is no basis for Plaintiff's staleness argument with respect to his DIB claim.

While the staleness argument does not fail on its face as to the SSI claim, it fails as a matter of fact.  First, as to the physical RFC finding, the ALJ made a proper evaluation of the medical evidence as discussed above.  Second, as to the mental RFC finding, the consulting psychologist and psychiatrist (Exs. 5F and 9F) determined that there was "insufficient evidence" in the record upon which to find a psychiatric impairment.  (Tr. 151, 179).  The record also reflects that Plaintiff refused to undergo a consultative psychological evaluation.  (Tr. 164, 191, 193).  Despite this evidence, the ALJ found that Plaintiff's anxiety and depression were "severe" impairments which resulted in "a moderate impairment in maintaining attention and concentration, such that [he] is able to...perform simple work tasks for an eight hour work day, assuming short work breaks on average every two hours."  (Tr. 23-24).

Plaintiff faults the ALJ for giving "little evidentiary weight" to the opinions of Dr. Sullivan.  Dr. Sullivan is not a treating psychiatrist.  He evaluated Plaintiff twice at the request of Plaintiff's counsel.  (Exs. 17F and 21F).  However, the ALJ accurately notes that Dr. Sullivan's opinions of

-24-

severely limiting mental impairments are "in stark contradiction to the treating records of [Plaintiff's] counselor, his wide-ranging physically and mentally demanding daily activities, and his testimony at the hearing." (Tr. 29). In fact, the ALJ's decision to assess a moderate impairment in attention and concentration appears to be generous based on this record. The ALJ limited Plaintiff to performing simple work tasks yet the record reflects that he was performing successfully in school and able to use power tools. (Tr. 292, 294, 358-359). Finally, Plaintiff's own testimony (Tr. 366-370) contradicted Dr. Sullivan's opinions. At one point, Plaintiff testified that he had applied for some jobs and felt he could perform "easy" unskilled duties (Tr. 351) which was consistent with the VE's opinion that Plaintiff's RFC permitted him to perform a range of unskilled jobs. (Tr. 31, 378).

## IV.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of Defendant.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 7, 2009